# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## CHATTANOOGA DIVISION

TONY DELORENZO,

     Plaintiff,

v.

CoreCivic of Tennessee, LLC,
CoreCivic, Inc.,
CoreCivic of Tennessee, LLC Medical
Plan, and John Doe Fiduciaries 1-5,

     Defendants.

Case No. _____

## **JURY DEMANDED**

## **COMPLAINT**

COMES NOW Plaintiff TONY DELORENZO, by and through his undersigned counsel, and hereby files his Complaint against Defendants CoreCivic of Tennessee, LLC, CoreCivic, Inc., CoreCivic of Tennessee, LLC Medical Plan and John Doe Fiduciaries 1-5 (collectively "Defendants"), respectfully showing to the Court as follows:

Plaintiff brings this action pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), and ERISA § 510, 29 U.S.C. § 1140 due to Defendants' actions with regard to a health benefit plan issued by Plaintiff's employers, CoreCivic of Tennessee LLC and/or CoreCivic, Inc.

1

## PARTIES

1.

Plaintiff Tony DeLorenzo is a resident of Chattanooga, Hamilton County, Tennessee.

2.

CoreCivic of Tennessee LLC is a limited liability corporation organized under the laws of the State of Tennessee with its principal place of business in Nashville, Tennessee. CoreCivic of Tennessee LLC is registered to do business in Tennessee. CoreCivic of Tennessee LLC may be served with process through its registered agent, CT Corporation System at 300 Montvue Road, Knoxville, Tennessee 37919.

3.

CoreCivic, Inc. is a public corporation organized under the laws of the State of Maryland with its principal place of business in Nashville, Tennessee. CoreCivic, Inc. is registered to do business in Tennessee. CoreCivic, Inc. may be served with process through its registered agent, CT Corporation System at 300 Montvue Road, Knoxville, Tennessee 37919.

4.

The CoreCivic of Tennessee, LLC Medical Plan ("the Plan") is an ERISA-governed employee welfare plan sponsored and administered by CoreCivic of

Tennessee, LLC. The Plan qualifies as an employee welfare benefit plan under The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, as defined by 29 U.S.C. § 1002(1). The Plan may be served with process through the Plan Administrator, CoreCivic of Tennessee, LLC, 10 Burlington Hills Blvd., Nashville, Tennessee 37215.

## JURISDICTION AND VENUE

### 5.

This Court has jurisdiction over this action pursuant to 29 U.S.C. §§ 1132 & 1140, and 28 U.S.C. § 1331.

### 6.

Venue is proper pursuant to 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e)(2) because the Defendants may be found in this District, employment records relevant to Plaintiff's causes of action are maintained in this District, the Plan(s) is/are administered in this District, and the breaches alleged herein occurred, in whole or in part, in this District.

## FACTS

### 7.

Mr. DeLorenzo was an employee of Defendants CoreCivic, Inc. and/or CoreCivic of Tennessee, LLC (collectively, Defendants CoreCivic). In his capacity as an employee, Mr. DeLorenzo is/was a participant in certain other

3

ERISA-governed welfare benefit plans sponsored and administered by CoreCivic of Tennessee, LLC and/or CoreCivic, Inc (the "ERISA plans").

8.

Defendants CoreCivic are both fiduciaries of the Plan, the ERISA plans, and are or were Mr. DeLorenzo's employer.

9.

Mr. DeLorenzo became employed by Defendants CoreCivic as a Corrections Officer in July 2017. As an employee of CoreCivic, he was covered under an employee health benefit plan for which UnitedHealthcare serves as the claims administrator, as well as a member of the ERISA plans including but not limited to a short-term disability plan and a long-term disability plan for which Aetna serves as the claims administrator.

10.

In October 2017, Mr. DeLorenzo discovered a growth on his spine. After consulting with his family, Mr. DeLorenzo scheduled a surgical procedure with Dr. Coleman Arnold to remove the growth on November 3, 2015.

11.

Mr. DeLorenzo spoke to employees of Defendants CoreCivic, including Captain Rankine about the surgery and planned to take a short amount of time off following the surgery.

12.

Mr. DeLorenzo continued to actively at work as a Correctional Officer up to the date of this surgery.

13.

On November 3, 2017, during surgery, it was discovered that the growth on Mr. DeLorenzo's spine was cancerous.

14.

Mr. DeLorenzo's physicians informed him that the cancerous growth was stage IV metastatic melanoma.

15.

Mr. DeLorenzo's physicians recommended that he begin an extensive course of treatment immediately.

16.

Mr. DeLorenzo brought this information to CoreCivic on or before his expected return to work date of November 10, 2017.

17.

When Mr. DeLorenzo informed Human Resources of his diagnosis and expected treatment, members of Human Resources told Mr. DeLorenzo that they would "work with him" throughout this difficult period and allowed him to take a leave of absence.

18.

Mr. DeLorenzo underwent additional surgeries in 2017 including excisions of his cancerous tissue.

19.

During this period, Mr. DeLorenzo remained employed by and continued to be compensated by Defendants CoreCivic. He also continued to have health insurance premiums deducted from his wages.

20.

After multiple surgeries, Mr. DeLorenzo returned to work with Defendants CoreCivic in January 2018.

21.

Mr. DeLorenzo continued to seek treatment. Mr. DeLorenzo was receiving treatment at the Cancer Treatment Centers of America. In approximately January of 2018, a member of the billing department of the Cancer Treatment Centers of America informed Mr. DeLorenzo, for the first time, that his health insurance coverage had been cancelled as of November 2017.

22.

In response to this troubling news, Mr. DeLorenzo reached out to Defendants CoreCivic, who could not explain what happened.

23.

Mr. DeLorenzo immediately followed up with his health insurance administrator, UnitedHealthcare, which informed him that his health insurance coverage had been terminated for failure to pay. Mr. DeLorenzo consulted with the CoreCivic Human Resources department, who informed Mr. DeLorenzo that he would not be able to re-apply for coverage until March 2018.hAM

24.

Mr. DeLorenzo did not understand why his insurance was terminated for failure to pay because he had received paystubs in January 2018 that showed deductions from his wages for the payment of his health insurance.

25.

The premiums that were deducted from Mr. DeLorenzo's wages for the payment of health insurance premiums were later reimbursed to Mr. DeLorenzo.

26.

In March 2018, after additional cancer treatments, Mr. DeLorenzo requested and received a medical leave of absence. Mr. DeLorenzo told Human Resources that he had received a bill for his health insurance. A Human Resources representative told Mr. DeLorenzo that he did not have to worry about the health insurance bill because CoreCivic would take care of everything.

7

27.

In April 2018, Mr. DeLorenzo's medical insurance benefits were reinstated.

28.

In August 2018, Mr. DeLorenzo attempted to schedule additional procedures which were expected to remove all traces of cancer from his body, except for in his bloodstream. Mr. DeLorenzo's physicians indicated that if these procedures were effective, Mr. DeLorenzo could be expected to live for many years. However, on August 4, 2018, Mr. DeLorenzo's surgery was cancelled because his medical insurance was no longer valid.

29.

UnitedHealthcare informed Mr. DeLorenzo that his coverage had lapsed because he was no longer employed by Defendants CoreCivic and that he was not eligible to be reinstated to receive coverage under COBRA because of non-payment of his premiums since his termination by Defendants CoreCivic.

30.

When Mr. DeLorenzo asked his employer about this second lack of insurance coverage, Matt Sams, in CoreCivic's Human Resources Department, informed Mr. DeLorenzo that CoreCivic had terminated him because it "just could not pay medical insurance premiums anymore for someone who is not working." Mr. Sams informed Mr. DeLorenzo that CoreCivic would list him as being

8

terminated for medical reasons so that he would be eligible for rehire in the future.

31.

While Mr. DeLorenzo scrambled to acquire additional insurance coverage, his receipt of the above-mentioned procedures was delayed.

32.

In October 2018, Mr. DeLorenzo was able, at great length, to obtain medical coverage with a new provider-of-last-resort (not through his employment) and begin a new regimen of treatment for his cancer.

a.

Following this delay in treatment, Mr. DeLorenzo's physicians informed Mr. DeLorenzo that his cancer had proliferated during the time period when he was uninsured.

33.

Mr. DeLorenzo continues to receive cancer treatments. However, as of the date of filing this Complaint, Mr. DeLorenzo's prognosis is not hopeful.

34.

The acts or omissions by Defendants CoreCivic and the Plan caused Mr. DeLorenzo's health coverage to be cancelled multiple times between 2017 and 2018 at critical points in his care. These cancellations prevented him from receiving needed medical care, threatened his recovery and his health, accelerated

the spread of his cancer, and significantly decreased his prospects of recovery.  In particular, the unwarranted lapses in coverage made it impossible for Mr. DeLorenzo to receive consistent medical care and treatment.  Further, Mr. DeLorenzo has been caused to incur medical bills that he would otherwise not have incurred without these unwarranted lapses in his insurance coverage.

35.

Losing his health insurance coverage caused Mr. DeLorenzo serious financial difficulties, including but not limited to incurring the costs associated with medical treatment that he believed was, or should have been, covered by his health insurance.  Further, without consistent medical care, Mr. DeLorenzo was unable to demonstrate and support claims for his continuing short- or long-term disability benefits.

36.

When Defendants CoreCivic cancelled Mr. DeLorenzo's health coverage without cause or warning, they prevented him from continuing his recovery and treatment with his current physicians.

37.

The reason given by Defendants CoreCivic and/or the Plan for cancelling Mr. DeLorenzo's coverage was because they "just could not pay medical insurance premiums anymore for someone who is not working," even though Mr. DeLorenzo

10

remained employed on medical leave and was not informed that his coverage was in jeopardy.

38.

Interference with Mr. DeLorenzo's health coverage also prevented him from getting needed medical care or being able to take needed medication to combat the cancer that was ravaging his body for extended periods of time.

39.

As a direct result of these lapses in coverage, Mr. DeLorenzo suffered significant mental and physical pain and suffering, and aggravation of his medical condition, which have dramatically shortened both his length and quality of life.

40.

Though Defendants CoreCivic and the Plan promised to continue his health coverage and reinstituted his coverage on at least one occasion, they did nothing to address the extensive injuries or loss of life expectancy that Mr. DeLorenzo has experienced.

## COUNT I – LAPSES IN HEALTH COVERAGE

## BREACH OF FIDUCIARY DUTY: ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)

41.

The allegations contained in Paragraphs 1 through 41 above are re-alleged and incorporated by reference as if fully set forth herein.

42.

Defendants had a fiduciary duty to act in Plaintiff's best interest as to the provision of employee benefits, eligibility for benefits, and with regard to payment of premiums so Plaintiff would receive continuous, uninterrupted health coverage, under the terms of the Plan.

43.

Defendants breached that duty when they cancelled Plaintiff's health coverage or allowed Plaintiff's health coverage to lapse on multiple occasions.

44.

Plaintiff suffered injury(ies) as a result of the repeated loss of health coverage, including but not limited to significant pain, suffering, unnecessary degradation of his health, loss of quality of life, emotional distress, and additional medical bills.

45.

Defendants' breach also prevented Plaintiff from receiving necessary medical care and treatment from his medical providers following his injury which caused him pain and suffering and shortened the length and quality of his life.

46.

Plaintiff seeks equitable remedies for the losses he experienced including but not limited to equitable restitution, surcharge, imposition of a constructive trust, and disgorgement of ill-gotten profits and gains as a result of Defendants' breach of their fiduciary duties in violation of ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

## COUNT II – INTERFERENCE WITH UNITEDHEALTHCARE HEALTH INSURANCE COVERAGE

## BREACH OF FIDUCIARY DUTY: ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) and/or ERISA § 510 INTERFERENCE WITH ERISA BENEFITS

47.

The allegations contained in Paragraphs 1 through 41 above are re-alleged and incorporated by reference as if fully set forth herein.

48.

Plaintiff, through his employment, had a contract with UnitedHealthcare via the Plan to receive health coverage.

49.

Defendants had a fiduciary duty not to interfere with the relationship between Plaintiff, the Plan, and UnitedHealthcare with regard to the provision of health coverage, under the Plan.

50.

Defendants interfered with the relationship between Plaintiff, the Plan, and UnitedHealthcare on multiple occasions by instructing UnitedHealthcare to cancel Plaintiff's health coverage.

51.

Defendants CoreCivic also interfered with the relationship between Plaintiff, the Plan, and UnitedHealthcare on multiple occasions by telling UnitedHealthcare that Plaintiff was no longer employed even while he continued to work as a correctional officer or was on approved medical leave.

52.

As a result of these false statements, UnitedHealthcare cancelled Plaintiff's health insurance coverage under the Plan and refused to pay for his ongoing treatment, which was then falsely billed to Plaintiff.

53.

Plaintiff seeks all available relief for the damages he has suffered stemming from Defendants' interference with Plaintiff's relationship with the Plan and his health carrier and the resulting injuries that he has suffered and continues to suffer.

## COUNT III – INTERFERENCE WITH AETNA DISABILITY COVERAGE

## BREACH OF FIDUCIARY DUTY: ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) and/or ERISA § 510 INTERFERENCE WITH ERISA BENEFITS

14

54.

The allegations contained in Paragraphs 1 through 41 above are re-alleged and incorporated by reference as if fully set forth herein.

55.

Plaintiff, through his employment, had a contract with Aetna via the Plan to receive short- and long-term disability coverage.

56.

Defendants had a fiduciary duty not to interfere with the relationship between Plaintiff, the Plan and Aetna with regard to the provision of short- and long-term disability coverage, under the Plan.

57.

Defendants intentionally interfered with the relationship between Plaintiff, the Plan, and Aetna on multiple occasions by instructing UnitedHealthcare to cancel his health coverage, and by failing or refusing to inform Plaintiff that he was eligible to apply for and receive short- and long-term disability coverage.

58.

As a result of Plaintiff's inability to apply for disability coverage, Plaintiff has lost significant income.

59.

Plaintiff seeks all available relief for the damages he has suffered stemming from Defendants' interference with Plaintiff's relationship with his disability carriers via the Plan and the resulting injuries that he has suffered and continues to suffer.

## COUNT IV – INTERFERENCE WITH AETNA LIFE INSURANCE COVERAGE

## BREACH OF FIDUCIARY DUTY: ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) and/or ERISA § 510 INTERFERENCE WITH ERISA BENEFITS

60.

The allegations contained in Paragraphs 1 through 41 above are re-alleged and incorporated by reference as if fully set forth herein.

61.

Plaintiff, through his employment, had a contract with Aetna via the Plan to receive life insurance coverage.

62.

Defendants had a fiduciary duty not to interfere with the relationship between Plaintiff, the Plan, and Aetna with regard to the provision of life insurance coverage, under the Plan.

63.

Defendants intentionally interfered with the relationship between Plaintiff, the Plan, and Aetna by terminating Plaintiff in order to avoid having to provide life insurance coverage.

64.

As a result of Plaintiff's loss of life insurance coverage and his inability to gain comparative coverage due to his illness, Plaintiff has lost significant income and security for himself and his family.

65.

Plaintiff seeks all available relief for the damages he has suffered stemming from Defendants' interference with Plaintiff's relationship with his life insurance carrier via the Plan and the resulting injuries that he has suffered and continues to suffer.

## COUNT V – FIDUCIARY MISREPRESENTATIONS

## BREACH OF FIDUCIARY DUTY: ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)

66.

The allegations contained in Paragraphs 1 through 41 above are re-alleged and incorporated by reference as if fully set forth herein.

17

67.

Defendants had a fiduciary duty not to misrepresent the facts to Plaintiff with regard to their provision of health coverage under the Plan.

68.

Defendants repeatedly made misrepresentations that Plaintiff was covered by the Plan's health insurance policy, including falsely informing Plaintiff that CoreCivic would continue to pay Plaintiff's health insurance premiums during his treatment, which they failed or refused to do.

69.

Plaintiff relied upon Defendants' repeated misrepresentations and made repeated trips for medical treatment that should have been but were not covered by the Plan. Plaintiff suffered significant emotional, psychological, and financial pain as a result of his reliance upon Defendants' misrepresentations.

70.

Defendants' cancellation of Plaintiff's health coverage also deprived Plaintiff of disability coverage and caused him financial and emotional stress, psychological injury, and loss of enjoyment of life.

## COUNT VI –TERMINATING EMPLOYMENT TO QUIT COVERAGE INTERFERENCE WITH ERISA BENEFITS: ERISA § 510, 29 U.S.C. § 1140

71.

The allegations contained in Paragraphs 1 through 41 above are re-alleged and incorporated by reference as if fully set forth herein.

72.

Defendants were aware that Plaintiff sought to return to work multiple times during his cancer treatment and has in fact returned and worked during his treatment in order to avoid cancellation of his health, disability and life insurance coverage.

73.

During the times when Plaintiff was not able to work due to his cancer treatment, Defendants placed him on approved medical leave and continued to pay employee benefit premiums for his health, disability, and life insurance coverage.

74.

While Plaintiff was on an approved medical leave and relying upon the assurances that Defendants would continue to cover his healthcare and other premiums during his leave, Defendants terminated his employment because Defendants "just could not pay medical insurance premiums anymore for someone who is not working."

75.

Defendants terminated Plaintiff from his employment in whole or in part to

avoid having to continue to provide employee benefits.

76.

Plaintiff has been injured by the termination of his employment and Defendants' continued refusal to provide health, disability, and life coverage and has suffered lost wages, emotional injuries, and other damages in violation of ERISA § 510, 29 U.S.C. § 1140.

## **COUNT VII**

## **ATTORNEYS' FEES: 29 U.S.C. § 1132(g)**

77.

The allegations contained in Paragraphs 1 through 77 above are re-alleged and incorporated by reference as if fully set forth herein.

78.

Title 29 U.S.C. § 1132(g) provides that the Court may award reasonable attorneys' fees and costs of bringing this action.

79.

Defendants have acted in reprehensibly in handling Plaintiff's coverages under the Plan. Among other things, Defendants intentionally and/or recklessly repeatedly cancelled his health coverage; refused to provide or reinstitute or continue, without interruption, Plaintiff's health coverage; refused to inform him of potential coverage under the Plan's disability provisions; prevented him from

demonstrating his continuing disability by refusing him medical care and treatment; and, misrepresented whether coverage was in force.

80.

In an action brought by a "participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party" (29 U.S.C. § 1132(g)(1)), so long as the party achieves "some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 130 S.Ct. 2149, 2158 (2010). This Court should award Plaintiff his reasonable attorneys' fees and the costs of bringing this action.

81.

Plaintiff demands a jury trial for all issues so triable.

WHEREFORE, Plaintiff Tony DeLorenzo prays that the Court:

(a)     Issue a declaratory judgment that Defendants knowingly cancelled Plaintiff's health coverage in violation of the Plan or knowingly allowed Plaintiff's health coverage to lapse in violation of the Plan and that Plaintiff has been injured by the cancellation, lapse or refusal to provide health coverage in violation of ERISA §502(a)(3); and failed to provide complete and accurate information with respect to his benefits;

21

(b)     Issue a declaratory judgment that Defendants breached their fiduciary duties in violation of ERISA §502(a)(3) and/or violated ERISA § 510 when they interfered with Plaintiff's relationship with UnitedHealthcare, his healthcare carrier/provider;

(c)     Issue a declaratory judgment that Defendants breached their fiduciary duties in violation of ERISA § 502(a)(3) and/or violated ERISA § 510 when they interfered with Plaintiff's relationship with Aetna, his short- and long-term disability benefit provider;

(d)     Issue a declaratory judgment that Defendants breached their fiduciary duties in violation of ERISA § 502(a)(3) when they made material misrepresentations or omissions to Plaintiff, upon which he reasonably relied and was damaged;

(e)     Issue a declaratory judgment that Defendants breached their fiduciary duties in violation of ERISA §502(a)(3) when cancelling his health coverage and interfering with his ability to retain that coverage;

(f)     Issue declaratory judgment breached their fiduciary duties in violation of 510 when they terminated his employment;

(g)     Award Plaintiff equitable remedies for the losses he experienced including but not limited to equitable restitution, surcharge, imposition of a constructive trust, and disgorgement of ill-gotten

22

profits and gains as a result of Defendants' breaches of fiduciary duties;

(h)     Award Plaintiff all appropriate relief to remedy what he has suffered as a result of Defendants' decisions;

(i)     Award all applicable pre- and post-judgment interest;

(j)     Award Plaintiff the reasonable costs and expenses of this action, including reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g);

(k)     Grant a jury trial on all issues so triable by jury; and

(l)     Grant such other and further relief as this Court deems just and appropriate.

This 14th day of June 2019.

/s/ Joshua R. Ward_____
Joshua R. Ward
Tennessee Bar No. 031329

Massey & Associates, PC
6400 Lee Highway, Suite. 101
Chattanooga, TN 37421
Phone: 423-697-4529
Fax: 423-634-8886
Email: josh@masseyattorneys.com

/s/ Nancy B. Pridgen_____
Nancy B. Pridgen
Georgia Bar No. 587949

PRIDGEN LAW GROUP
One Glenlake Parkway, Suite 650
Atlanta, Georgia 30328
Phone:  404-551-5884
Fax:  678-812-3654
Email: nancy@pridgenlaw.com
*Attorneys for Plaintiff*